THE STATE, EX REL. COYNE ET AL., *v.* TODIA, JUDGE, ET AL.

[Cite as State, ex rel. Coyne, *v.* Todia (1989), 45 Ohio St. 3d 232.]

(No. 88-1900—Submitted June 28, 1989—Decided September 6, 1989.)

*Rick J. Carbone, David A. Lambros, Ryan, Gygli & O'Brien* and *John D. Ryan,* for relators.

*Wargo, Wargo & Walters Co., L.P.A., James N. Walters III* and *Frank J. Groh-Wargo,* for respondents.

*Per Curiam.*

I

Respondents construe R.C. 1901.021[1] and 1905.01 to permit a

---

[1] R.C. 1901.021 provides:

"(A) The judge or judges of any municipal court having territorial jurisdiction outside the corporate limits of the municipal corporation in which it is located may sit outside the corporate limits of the

municipal court to divest a mayor's court of jurisdiction by having a judge of the municipal court sit in the municipal corporation currently within the municipal court's territorial jurisdiction. Relators contend that these statutes should not be so construed. We agree with relators and hereby grant a peremptory writ of prohibition prohibiting respondents from enforcing Rule 21 of the Berea Municipal Court and the journal entries made in connection with it. We also dismiss respondents' counterclaims.

R.C. 1901.021 contains no specific authority for respondents to sit in the relators-municipal corporations named in Rule 21. Therefore, respondents must rely on the general authority of R.C. 1901.021(A):

"The judge or judges of any municipal court having territorial jurisdiction outside the corporate limits of the municipal corporation in which it is located may sit outside the corporate limits of the municipal corporation within the area of its territorial jurisdiction."

Thus, respondents have authority to sit in Brook Park, Olmsted Falls, and Strongsville. The question is whether their decision to sit there divests the mayor's courts of jurisdiction. R.C. 1901.021(J) clearly states that R.C. 1905.01 controls whether the assignment of a municipal judge to sit in a municipal corporation other than that in which the court is located affects the mayor's court's jurisdiction. R.C. 1905.01 authorizes mayors to hear certain types of cases "[i]n all municipal corporations not being the site of a municipal court nor a place where a judge of the Auglaize county, Crawford county, Jackson county, Miami county, Portage county, or Wayne county municipal court sits as required pursuant to section 1901.021

---

municipal corporation within the area of its territorial jurisdiction.

"(B) Two or more of the judges of the Hamilton county municipal court shall be assigned by the presiding judge of the court to sit outside the municipal corporation of Cincinnati.

"(C) Two of the judges of the Portage county municipal court shall sit within the municipal corporation of Ravenna, and one of the judges shall sit within the municipal corporation of Kent. The judges may sit in other incorporated areas of Portage county.

"(D) One of the judges of the Wayne county municipal court shall sit within the municipal corporation of Wooster, and one shall sit within the municipal corporation of Orrville. Both judges may sit in other incorporated areas of Wayne county.

"(E) The judge of the Auglaize county municipal court shall sit within the municipal corporations of Wapakoneta and St. Marys and may sit in other incorporated areas in Auglaize county.

"(F) At least one of the judges of the Miami county municipal court shall sit within the municipal corporations of Troy, Piqua, and Tipp City, and the judges may sit in other incorporated areas of Miami county.

"(G) The judge of the Crawford county municipal court shall sit within the municipal corporations of Bucyrus and Galion and may sit in other incorporated areas in Crawford county.

"(H) The judge of the Jackson county municipal court shall sit within the municipal corporations of Jackson and Wellston and may sit in other incorporated areas in Jackson county.

"(I) In any municipal court, other than the Hamilton county municipal court, that has more than one judge, the decision for one or more judges to sit outside the corporate limits of the municipal corporation shall be made by rule of the court as provided in division (C) of sections 1901.14 and 1901.16 of the Revised Code.

"(J) The assignment of a judge to sit in a municipal corporation other than that in which the court is located does not affect the jurisdiction of the mayor except as provided in section 1905.01 of the Revised Code."

of the Revised Code *or by designation of the judges pursuant to section 1901.021 of the Revised Code * * *.*" (Emphasis added.) Respondents contend, essentially, that the emphasized clause includes designation of a judge to sit under R.C. 1901.021(A). However, we cannot sensibly separate this clause from the preceding clause, "* * * nor a place where a judge of the Auglaize county * * * [etc.] municipal court sits as required pursuant to section 1901.021 of the Revised Code. * * *" Thus, in our view, R.C. 1905.01 refers only to counties specifically named in both statutes — Auglaize, Crawford, Jackson, Miami, Portage, and Wayne — and thus only to divisions (C), (D), (E), (F), (G), and (H) of R.C. 1901.021. We observe that in each of these divisions municipal court judges are required to sit in certain municipal corporations and permitted to sit in others within their respective territorial jurisdictions, which is reflected in R.C. 1905.01 by the language, "* * * as required pursuant to section 1901.021 * * * or by designation of the judges pursuant to section 1901.021 * * *."

Legislative history also favors relators' position. R.C. 1901.021 was enacted on July 21, 1959, and first stated:

"Notwithstanding any other provision of this chapter, the judge or judges of any municipal court having territorial jurisdiction outside the corporate limits of its municipal corporation may sit outside the corporate limits of such municipal corporation within the area of territorial jurisdiction. In any municipal court having more than one judge, the decision for one or more of such judges to sit outside the corporate limits of such municipal corporation shall be made by rule of the court as provided in division (C) of section 1901.14 and division (C)

of section 1901.16 of the Revised Code." 128 Ohio Laws 394.

Thus, the original section consisted, in substance, of current R.C. 1901.021(A) and (I). There is no reference to mayors' jurisdiction, as in current R.C. 1901.021(J).

R.C. 1905.01 is an older statute. It was amended in 1959 and read at that time:

"In cities not having a police court and not being the site of a municipal court, the mayor has final jurisdiction to hear and determine any prosecution for the violation of an ordinance of the municipal corporation, unless imprisonment is prescribed as part of the punishment, and has jurisdiction in all criminal causes involving moving traffic violations occurring on state highways located within the boundaries of the municipal corporation." 128 Ohio Laws 834.

Thus, in 1959, neither R.C. 1901.021 nor R.C. 1905.01 mentioned mayors' jurisdiction being superseded by action under what is now, in substance, R.C. 1901.021(A), the language under which respondents are acting, and which they claim now activates the current supersession language.

In 1965, the General Assembly enacted the first language in R.C. 1901.021 that required judges in a named municipal court (Hamilton County) to sit outside the corporate limits of the municipal corporation (Cincinnati). 131 Ohio Laws 593. In 1967, it enacted the first language in R.C. 1901.021 that both required a municipal court with countywide jurisdiction (Portage) to sit in certain municipal corporations and permitted it to sit in others. 132 Ohio Laws, Part I, 839-840. In the same bill, it amended R.C. 1905.01 to refer specifically to the Portage County Municipal Court. In doing so, the General Assembly clearly enacted the pivotal "* * * or by desig-

nation * * *" clause referring to R.C. 1901.021 in the context of the Portage County Municipal Court only:

"Sec. 1905.01. In all municipal corporations not having a police court and not being the site of a municipal court *nor a place where Portage county municipal court sits as required pursuant to section 1901.021 of the Revised Code or by designation of the judges pursuant to section 1901.021 of the Revised Code,* the mayor of such municipal corporation has jurisdiction to hear and determine any prosecution for the violation of an ordinance of the municipal corporation, and has jurisdiction in all criminal causes involving moving traffic violations occurring on state highways located within the boundaries of the municipal corporation, subject to the limitations of sections 2937.08 and 2938.04 of the Revised Code.

"In keeping his docket and files, the mayor shall be governed by the laws pertaining to county courts." (Emphasis added to mark new language.) 132 Ohio Laws 900.

Also in 1967, the General Assembly enacted for the first time the supersession language of current R.C. 1901.021(J). Thus, after the 1965 and 1967 amendments, R.C. 1901.021 read:

"Notwithstanding any other provision of this chapter, the judge or judges of any municipal court having territorial jurisdiction outside the corporate limits of its municipal corporation may sit outside the corporate limits of such municipal corporation within the area of territorial jurisdiction.

"On or after January 1, 1968, two or more of the judges of the Hamilton county municipal court shall be assigned by the presiding judge to sit outside the municipal corporation limits of the city of Cincinnati.

"On and after January 1, 1968, one of the judges of the Portage county municipal court shall sit within the municipal corporation limits of the city of Ravenna and may sit in other incorporated areas of Portage county, and one of the judges of the Portage county municipal court shall sit within the municipal corporation limits of the city of Kent and may sit in other incorporated areas of Portage county.

"In any municipal court having more than one judge, except in the case of the Hamilton county municipal court, the decision for one or more such judges to sit outside the corporate limits of such municipal corporation shall be made by rule of the court as provided in division (C) of section 1901.14 and division (C) of section 1901.16 of the Revised Code.

"The assignment of a judge to sit in a municipal corporation other than in which the court is located does not affect the jurisdiction of the mayor except as provided in section 1905.01 of the Revised Code.

"The termination of a municipal court reinstates the jurisdiction of the mayor." 132 Ohio Laws, Part I, 839-840.

In 1975 and 1977, when the General Assembly added Wayne, Auglaize, Miami, Crawford and Jackson Counties to R.C. 1901.021 as jurisdictions, like Portage County, in which the court was required to sit in certain municipal corporations and permitted to sit in others, it also added those counties to R.C. 1905.01. 136 Ohio Laws, Part I, 1954-1955, 1978; 137 Ohio Laws, Part II, 2408, 2422. Thus, syntax and historical evidence support the view that only the Auglaize, Crawford, Jackson, Miami, Portage, and Wayne County Municipal Courts may divest a mayor's court of jurisdiction by deciding to sit in a

municipal corporation within the municipal court's jurisdiction.

The elements of a proper cause of action to obtain a writ of prohibition are that (1) the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power; (2) the exercise of that power is unauthorized by law; and (3) refusal of the writ would result in injury for which no other adequate legal remedy exists. *Commercial Savings Bank* v. *Wyandot Cty. Court of Common Pleas* (1988), 35 Ohio St. 3d 192, 193, 519 N.E. 2d 647, 648-649. By seeking exclusive jurisdiction at the expense of the relators-mayor's courts, respondents are about to exercise judicial power — that currently exercised by the mayors.

Moreover, respondents, who may act only under the general authority of R.C. 1901.021(A), have no authority to exercise exclusive jurisdiction. Thus, the second prerequisite for a writ of prohibition is satisfied.

The question of an adequate remedy remains. Respondents' second affirmative defense states that relators have adequate remedies at law. Although relators might have a remedy through appeal of respondents' journal entries, we have said that the adequacy of appeal is irrelevant in a prohibition case if a court is without any jurisdiction whatsoever to act. *State, ex rel. Adams,* v. *Gusweiler*

(1972), 30 Ohio St. 2d 326, 329, 59 O.O. 2d 387, 388, 285 N.E. 2d 22, 24.

We have already held that the respondents' proposed action is unauthorized. Moreover, the power they claim is jurisdictional. Under R.C. 1901.021(J), 1901.20(A)[2] and 1905.01, mayor's courts and municipal courts have concurrent jurisdiction, except in those counties specifically named in both R.C. 1901.021 and 1905.01. Respondents' Rule 21 purports to divest the relators-mayor's courts of jurisdiction and vest exclusive jurisdiction in the Berea Municipal Court. However, as we have said, R.C. 1905.01 does not permit this. Therefore, respondents' proposed unauthorized acts are jurisdictional because they claim exclusive, territorial jurisdiction.

Injunction can be an adequate legal remedy. See *State, ex rel. MacDiarmid,* v. *Eastman* (1928), 118 Ohio St. 121, 160 N.E. 626, paragraph two of the syllabus, and *Zangerle* v. *Cuyahoga Cty. Court of Common Pleas* (1943), 141 Ohio St. 70, 25 O.O. 199, 46 N.E. 2d 865. However, for injunction to be a truly adequate remedy in this case, relators would have to be assured of obtaining a temporary restraining order to prevent disruption during the pendency of the action. They have no such assurance. Accordingly, we extend the *Gusweiler* rule and hold that when an inferior court is without any jurisdiction whatsoever to act, the avail-

---

[2] R.C. 1901.20(A) provides:

"The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory, unless the violation is required to be handled by a parking violations bureau or joint parking violations bureau pursuant to Chapter 4521. of the Revised Code, and of the violation of any misdemeanor committed within the limits of its territory. The municipal court also has jurisdiction of the violation of a vehicle parking or standing resolution or regulation if a local authority, as defined in division (D) of section 4521.01 of the Revised Code, has specified that it is not to be considered a criminal offense, if the violation is committed within the limits of the court's territory, and if the violation is not required to be handled by a parking violations bureau or joint parking violations bureau pursuant to Chapter 4521. of the Revised Code. In all such prosecutions and cases, the court shall proceed to a final determination of the prosecution or case."

ability or adequacy of injunction as a remedy is immaterial to the exercise of supervisory jurisdiction by a superior court to prevent usurpation of jurisdiction by the inferior court. See *State, ex rel. Adams,* v. *Gusweiler, supra,* at 329, 59 O.O. 2d at 388, 285 N.E. 2d at 24.

## II

The respondents' counterclaims state that "[t]he relator mayors have not served pursuant to statute as judges of a mayor's court" and "[t]he relator mayors['] sitting as judges violate[s] the United States and Ohio Constitutions." Relators have moved to dismiss these counterclaims, contending they are actions for declaratory judgment over which this court lacks jurisdiction. Respondents argue that the counterclaims are mandatory under Civ. R. 13(A) and that they are actions in quo warranto.

It is not clear what respondents' first counterclaim means. It is clear, however, that both counterclaims fail as declaratory judgment and quo warranto actions. In *State, ex rel. Neer,* v. *Indus. Comm.* (1978), 53 Ohio St. 2d 22, 7 O.O. 3d 64, 371 N.E. 2d 842, we held that courts of appeals have no jurisdiction to hear declaratory judgment actions because that would extend their constitutionally declared jurisdiction over original actions. The same reasoning applies to this court whose constitutional jurisdiction over original actions is the same except for matters involving government of the bar.

Respondents argue that their counterclaims are compulsory under Civ. R. 13(A). We have held that a permissive counterclaim for money damages could not be brought in a mandamus action originating in this court because "* * * neither the Civil Rules nor statutes can expand this court's original jurisdiction and require it to hear an action not authorized by the Ohio Constitution." *State, ex rel. Cleveland Municipal Court,* v. *Cleveland City Council* (1973), 34 Ohio St. 2d 120, 122, 63 O.O. 2d 199, 200, 296 N.E. 2d 544, 547.

Since the Civil Rules cannot override the Constitution, it makes no difference whether a counterclaim outside this court's jurisdiction is compulsory under Civ. R. 13(A) or permissive under Civ. R. 13(B). Both rules are equally impotent to extend this court's jurisdiction.

Respondents argue that the counterclaims are in quo warranto under R.C. 2733.01.[3] Quo warranto is "primarily a state action 'to shield the sovereignty of the state from invasion and to prevent the abuse of corporate powers.' * * *" *State, ex rel. Thomas,* v. *Kane* (1989), 43 Ohio St. 3d 164, 165, 539 N.E. 2d 1122, 1123-1124, quoting *State, ex rel. Cain,* v. *Kay* (1974), 38 Ohio St. 2d 15, 17, 67 O.O. 2d 33, 34, 309 N.E. 2d 860, 862, and *State* v. *Dayton Traction Co.* (1901), 64 Ohio St. 272, 280, 60 N.E. 291, 291-292. See, also, R.C. 2733.04 and 2733.05, which both require and permit the Ohio Attorney General and prosecuting at-

---

[3] R.C. 2733.01 provides:

"A civil action in quo warranto may be brought in the name of the state:

"(A) Against a person who usurps, intrudes into, or unlawfully holds or exercises a public office, civil or military, or a franchise, within this state, or an office in a corporation created by the authority of this state;

"(B) Against a public officer, civil or military, who does or suffers an act which, by law, works a forfeiture of his office;

"(C) Against an association of persons who act as a corporation within this state without being legally incorporated."

torneys to bring the action under certain conditions. We have also stated that "* * * an action in quo warranto may be brought by an individual as a private citizen only when he personally is claiming title to a public office. R.C. 2733.06; *State, ex rel. Lindley,* v. *Maccabees* [1924], 109 Ohio St. 454 [142 N.E. 888]. See *State, ex rel. Cincinnati,* v. *Butler Water Conservancy Dist.* [1966], 5 Ohio St. 2d 80 [34 O.O. 2d 185, 214 N.E. 2d 80]. In all other instances, such action must be brought by the Attorney General or a prosecuting attorney. * * *" *State, ex rel. Annable,* v. *Stokes* (1970), 24 Ohio St. 2d 32, 32-33, 53 O.O. 2d 18, 262 N.E. 2d 863, 864. Respondents do not personally claim title to the relators-mayors' offices, *i.e.,* they do not claim to be the rightful mayors of these cities. They claim only a right to preempt some of the duties of those offices. Since they do not claim title to the offices, respondents lack standing to bring an action in quo warranto.

For the foregoing reasons, we grant relators' motion to dismiss the counterclaims and grant relators a peremptory writ of prohibition prohibiting respondents from enforcing Rule 21 of the Berea Municipal Court and the journal entries entered in connection with the rule.

*Motion to dismiss sustained and writ allowed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.