[Cite as *Jodka v. Cleveland*, 2014-Ohio-208.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99951**

---

## SAM JODKA

PLAINTIFF-APPELLANT

vs.

## CITY OF CLEVELAND, OHIO, ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-784372

**BEFORE:** Rocco, J., S. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** January 23, 2014

**ATTORNEYS FOR APPELLANT**

Andrew R. Mayle
Ronald J. Mayle
Jeremiah S. Ray
Mayle, Ray & Mayle, L.L.C.
210 South Front Street
Fremont, Ohio   43420

John T. Murray
Murray & Murray Co., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio   44870

**ATTORNEYS FOR APPELLEE**

Barbara Langhenry
Director of Law
City of Cleveland
By: Gary S. Singletary
Assistant Director of Law
Cleveland City Hall, Room 106
601 Lakeside Avenue
Cleveland, Ohio   44114-1077

**For Affiliated Computer Services, Inc., et al.**

Chris Bator
Gregory V. Mersol
Baker & Hostetler
3200 PNC Center
1900 East Ninth Street
Cleveland, Ohio   44114-3485

KENNETH A. ROCCO, J.:

{¶1} This appeal presents another challenge to the constitutionality of a city's automated camera civil traffic enforcement system. *See Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255; *Posner v. Cleveland*, 193 Ohio App.3d 211, 2011-Ohio-1370, 951 N.E.2d 476 (8th Dist.); *State ex rel. Scott v. Cleveland*, 166 Ohio App.3d 293, 2006-Ohio-2062, 850 N.E.2d 787 (8th Dist.), *aff'd State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923; *Balaban v. Cleveland*, 6th Cir. No. 07-CV-1366, 2010 U.S. Dist. LEXIS 10227 (Feb. 5, 2010); *Gardner v. Cleveland*, 656 F. Supp.2d 751 (N.D.Ohio2009); *Mendenhall v. Akron*, N.D.Ohio Nos. 06-CV-139 and 06-CV-154, 2008 U.S. Dist. LEXIS 112268 (Dec. 9, 2008); *Walker v. Toledo*, 6th Dist. Lucas No. L-12-1056, 2013-Ohio-2809.

{¶2} Herein, plaintiff-appellant Sam Jodka appeals from the trial court's order that granted the motions to dismiss and for summary judgment that defendants-appellees the city of Cleveland, Affiliated Computer Services, Inc., Boulder Acquisition Corp., and Xerox Corporation[1] filed in response to Jodka's complaint. Jodka's complaint asserted that Cleveland Codified Ordinances ("CCO") 413.031, which adopts an automated camera civil traffic enforcement system with a concomitant quasi-judicial process for that city, violates the Ohio Constitution's Article IV, Section 1. That section of the constitution gives the Ohio General Assembly the exclusive power to create a court. Jodka further asserted in his complaint that, because the city wrongfully collected monies

---

[1]As they were in the trial court, the latter three defendants-appellees are referred to in this opinion collectively as "ACS."

from purported violators of this unconstitutional ordinance, he was entitled to class certification in order to pursue a claim of unjust enrichment against the appellees.

{¶3} Jodka presents three assignments of error. He argues in his first and second assignments of error that the trial court's decision to dismiss his complaint was improper because: (1) several sections of CCO 413.031 impair the jurisdiction of the Cleveland Municipal Court; and (2) he presented a cognizable common law claim for unjust enrichment. In his third assignment of error, he asserts that the trial court improperly granted ACS's motion for summary judgment.

{¶4} This court finds that sections CCO 413.031(k) and (l) violate Article IV, Section 1 of the Ohio Constitution. Therefore, the trial court improperly dismissed that count of Jodka's complaint, and Jodka's first assignment of error is sustained.

{¶5} However, because Jodka lacks standing to pursue a claim for unjust enrichment, his second assignment of error is overruled. This court declines to address Jodka's third assignment of error because he presents no authority for his argument as required by App.R. 16(A)(7). The trial court's order is affirmed in part, reversed in part, and this matter is remanded for further proceedings.

{¶6} Jodka filed his complaint on June 6, 2012. Therein, he made the following pertinent allegations.

{¶7} Cleveland adopted a "civil enforcement system for red light and speeding offenders" pursuant to CCO 413.031. ACS provided the physical components for implementing the system. By means of this system, an electronic photographic, video or

electronic camera and vehicle sensor automatically captures images of each vehicle that violates a speed limit or a red light. ACS employees review the images, obtain the names and addresses of the vehicle owners, then send them to Cleveland employees. Appellees "jointly" send "tickets" for these violations to the vehicle owners, and the vehicle owners are assessed a monetary penalty of between $100.00 and $200.00. Appellees "jointly" reap the benefits of the monies collected under traffic camera enforcement system pursuant to CCO 413.031. In 2007, appellees sent Jodka a ticket for a violation of the ordinance, and he "paid the associated monetary penalty."[2]

{¶8} In the first count of his complaint, Jodka alleged that CCO 413.031 violated Art. IV, Sec. 1 of the Ohio Constitution because it "stripped" the municipal court of jurisdiction over violations of "any ordinance" as conferred by R.C. 1901.20. Jodka alleged that actions over which CCO 413.031 purported to apply were under the exclusive jurisdiction of municipal courts pursuant to R.C. 1901.20 because, "[b]y definition, 413.031 violations (i.e., speeding and red light) are not 'parking infractions.'" Jodka asserted that his payment of the penalty did not waive his claim, but "created" it.

{¶9} In the second count of his complaint, Jodka further alleged that, prior to its 2009 amendment, when he paid his fine, CCO 413.031 also violated the Art. I, Sec. 2 of the Ohio Constitution, because "owners" were the only class of persons who were liable for violations. Jodka asserted there was no rational basis to differentiate drivers who violated the ordinance between vehicle "owners" and vehicle "lessees." He demanded a

---

[2]Jodka did not specify the amount.

"return of the monies collected or held under former 413.031" by appellees, and asserted this claim was brought "in equity."

{¶10} In the third count of his complaint, Jodka requested the trial court to certify a class pursuant to Civ.R. 23 for every person who paid a penalty for a ticket issued under the unconstitutional ordinance. He sought to establish a "sub-class" of owners like himself who had paid a fine for violating the ordinance prior to its 2009 amendment.

{¶11} ACS filed a "motion to dismiss and/or for summary judgment" with respect to Jodka's complaint, attaching an affidavit to its motion.[3] On August 20, 2012, Cleveland filed a Civ.R. 12(B)(6) motion to dismiss Jodka's complaint. Neither appellee filed an answer.

{¶12} Appellees maintained in their motions that the ordinance is constitutional. ACS also argued that Jodka could not support his unjust enrichment claim against it because, rather than "splitting" ticket monies with ACS, Cleveland simply paid for ACS's services pursuant to a contract.

{¶13} On September 11, 2012, the trial court issued a journal entry that stated as follows:

> By agreement of the parties, Defendant ACS' argument that Plaintiff's unjust enrichment claims against ACS fail as a matter of law (found at pp. 16-17 of ACS' August 17, 2012 motion to dismiss and/or for summary judgment) is hereby severed from the motion, without prejudice. ACS will have the opportunity to reassert the argument, and the parties will

_____

[3]ACS's affidavit was that of its "Program Manager," Paul Kuczkowski, who "clarified" some of the "misstatements" about appellees' relationship as alleged in Jodka's complaint.

have the opportunity to engage in discovery, *in the event* Court *denies* ACS' motion to dismiss. * * *

(Emphasis added.)

{¶14} On September 21, 2012, Jodka filed a single brief in opposition to appellees' motions. He attached to his brief copies of: (1) the 1985 Cleveland Municipal Court order that permitted the city to establish a "Parking Violations Bureau" with the authority "to handle all parking infractions occurring within the territory of the municipal corporation," and (2) CCO Chapter 459, the enabling legislation for that bureau. As set forth in CCO 459.01(a), violation of CCO 413.031 was not listed within the definition of a "parking infraction."

{¶15} On May 3, 2013, the trial court issued an opinion and journal entry that granted appellees' motions and dismissed Jodka's complaint. The trial court stated in pertinent part as follows:

> Under CCO 413.031(k), violations are handled along the same lines as parking violations. As such, when an alleged violator disputes the claim, there is an appeal process where appeals are heard by the Parking Violations Bureau through an administrative process established by the Clerk of the Cleveland Municipal Court.
>
> * * * [T]he Complaint indicates that in 2007, Plaintiff Sam Jodka (hereafter "Plaintiff") was issued a ticket for violation of CCO 413.031. Plaintiff paid the monetary penalty and did not appeal the violation. However, five years after the ticket was issued, Plaintiff brought suit based upon the receipt of his ticket on the theory that CCO 413.031 violates Article IV, Section 1 of the Ohio Constitution, and that the version of CCO 413.031 in effect in 2007 violated the Equal Protection Clause of Article I, Section 2 of the Ohio Constitution.
>
> Plaintiff now seeks monetary relief against ACS and the City of Cleveland * * * . Defendants * * * have moved to dismiss and/or for

summary judgment * * * .

* * *

The General Assembly exercised its exclusive power to establish courts and determine their jurisdiction under Ohio Const. Art. IV, Sec. 1 by enacting R.C. 1901.20(A)(1), under which municipal courts were granted jurisdiction over the "violation of any ordinance * * * unless the violation is required to be handled by a parking violations bureau pursuant to Chapter 4521 of the Revised Code."

* * *

* * * [T]he precise issue of a constitutional violation has already been considered and rejected by Ohio Courts. * * *

Based on the applicable standards, and a review of case law, this Court finds CCO [413.031] does not violate Article IV, Section 1 of the Ohio Constitution, and finds the logic of both [State ex rel.] Scott [v. Cleveland, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923], and Mendenhall [v. Akron, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255] persuasive. Accordingly, this Court gran[t]s Defendants' Motions to Dismiss/Motions [sic] for Summary Judgment.

[As to] Plaintiff's claim that the earlier version of CCO 413.031 in effect prior to March 11, 2009 violated the Equal Protection Clause of Article I, Section 2 of the Ohio Constitution by treating vehicle owners and lessees differently[,]

[a]s a preliminary matter, this Court notes that "legislative enactments are presumed to be constitutional." See McCrone v. Bank One Corp., 107 Ohio St.3d 272, 2005 Ohio 6505, 839 N.E.2d 1, P. 20. * * *

* * * [T]his Court finds that there is no private cause of action for alleged violations of the Equal Protection Clause of the Ohio Constitution.

Accordingly, Plaintiff's claim for an alleged violation must fail as a matter of law.

* * *

For the reasons as outlined, the Court hereby grants Defendants' Motions to Dismiss and/or for Summary Judgment in their totality. Final.

{¶16} Jodka appeals from the trial court's decision with the following

three assignments of error.

      I.   The trial court erred in holding that a municipality has power to enact an ordinance that restricts and impairs a court's jurisdiction provided by the General Assembly.

      II.   The trial court erred in holding that a common law unjust-enrichment claim is not valid unless it is first enabled by statute.

      III.   The trial court erred in granting the non-Cleveland defendants' motion for summary judgment.

{¶17} In his first assignment of error, Jodka argues that the first count of his complaint was improperly dismissed because several sections of CCO 413.031 violate Art. IV, Sec. 1 of the Ohio Constitution, which vests judicial power in the courts of this state as "established by law." He contends that the trial court thus incorrectly relied upon the Ohio Supreme Court's decisions in *State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, and *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, when it dismissed his complaint, because those cases did not consider his specific argument. This court agrees.

{¶18} Appellate review of an order dismissing a complaint for failure to state a claim for relief is de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44. This court accepts the material allegations of the complaint as true and makes all reasonable inferences in favor of the plaintiff. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 280, 2005-Ohio-4985, 834 N.E.2d 791. In order for a defendant to prevail on a Civ.R. 12(B)(6) motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a court granting relief. *O'Brien v. Univ. Comm. Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d

753 (1975).

{¶19} Municipal ordinances, like other legislative enactments, are entitled to the presumption of constitutionality. *Hudson v. Albrecht*, 9 Ohio St.3d 69, 71, 458 N.E.2d 852 (1984). The burden is on the party challenging the ordinance to prove it is unconstitutional beyond a reasonable doubt. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17, citing *Klein v. Leis*, 99 Ohio St.3d 537, 795 N.E.2d 633, ¶ 4. Jodka maintains that CCO 413.031 unconstitutionally usurps the authority of the Cleveland Municipal Court to adjudicate certain traffic infractions. He does not assert that the ordinance is unconstitutional on another ground, as was the situation the Ohio Supreme Court faced in *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255.

{¶20} With respect to a different constitutional challenge to an automated camera civil traffic enforcement system, the *Mendenhall* court made the following pertinent observations at ¶ 16-41:

> Section 3, Article XVIII of the Ohio Constitution provides that municipalities are authorized "to exercise all powers of *local self-government* and to adopt and enforce within their limits such local *police, sanitary and other similar regulations*, as are *not* in conflict with general laws."

> We use a three-part test to evaluate claims that a municipality has exceeded its powers under the Home Rule Amendment. * * * [The test is] whether (1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute.

> The first part of the test relates to the ordinance. As we have held, "If an allegedly conflicting city ordinance relates *solely* to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of *local self-government*

within its jurisdiction." *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776,

¶ 23. If, on the other hand, the ordinance pertains to "*local police, sanitary and other similar regulations,*" Section 3, Article XVIII, Ohio Constitution, the municipality has exceeded its *home rule authority* only if the ordinance is *in conflict* with a general state law. * * *

### A. The ordinance

It is well established that *regulation of traffic is an exercise of police power that relates to public health and safety*, as well as to the general welfare of the public. See *Linndale v. State* (1999), 85 Ohio St.3d 52, 54, 706 N.E.2d 1227, citing *Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel* (1993), 67 Ohio St.3d 579, 583, 621 N.E.2d 696. Here, there is no dispute that the Akron ordinance is *an exercise of concurrent police power rather than self-government*. Thus, the question remains whether the state statute involved is a general law and, if so, whether the Akron ordinance impermissibly conflicts with the general law.

### B. The statute as a general law

* * * When interpreted as part of a whole, R.C. 4511.21 applies to all citizens generally as part of a statewide regulation of traffic laws and motor vehicle operation.

### C. Conflict Analysis

Because the statute regarding speed limits is a general law, we must finally determine whether, when cities pass ordinances creating automated systems of speed-limit enforcement, the municipal ordinances are in conflict with the state statute.

* * *

R.C. 4511.07 does not *expressly* signal that the state has exclusivity in the area of speed enforcement. Furthermore, because there is no indication that the state has intended to reserve to itself the ability to enforce *statewide traffic laws through a civil process*, we decline to recognize a conflict by implication.

* * *

* * * The ordinance does not change the speed limits established by state law or change the ability of police officers to cite offenders for traffic violations. After the enactment of the Akron ordinance, a person who speeds and is observed by a police officer remains subject to the usual traffic laws. Only when no police officer is present

and the automated camera captures the speed infraction does the Akron ordinance apply, not to invoke the criminal traffic law, but to impose an administrative penalty on the vehicle's owner. The city ordinance and state law may target identical conduct — speeding — but *the city ordinance does not replace traffic law. It merely supplements it.* * * * The Akron ordinance complements rather than conflicts with state law.

IV. Other theories

      *\* \* \* Although there are due process questions regarding the operation of the Akron Ordinance and those similar to it, those questions are not appropriately before us at this time* and will not be discussed here.

V. Conclusion

      * * * We hold *merely* that an Ohio municipality does not exceed its *home rule authority* when it creates an automated system for enforcement of traffic laws that imposes civil liability upon violators, provided that the municipality does not alter statewide traffic regulations.

(Emphasis added.)

{¶21} Thus, the *Mendenhall* court determined that a city's automated camera civil traffic enforcement system is constitutional pursuant only to Section 3, Article XVIII of the Ohio Constitution. Previously, in *Scott,* 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, at ¶ 2-6, the Ohio Supreme Court determined that issues of the constitutionality of CCO 413.031, which were "unclear" for purposes of the issuance of an extraordinary writ, should be resolved "in the ordinary course of law." *Accord Carroll v. Cleveland*, 522 Fed.Appx. 299, 2013 U.S. App. LEXIS 7178 (6th Cir.2013). *Scott* also provided an overview of the quasi-judicial process CCO 413.031 established at its inception. Since the decision in *Scott*, the ordinance, as amended, includes the following pertinent provisions:

      (h)    *Notices of Liability*. Any ticket for an automated red light or

speeding system violation under this section shall:

(1)  Be reviewed by a Cleveland police officer;

(2)   Be forwarded by first-class mail or personal service to the vehicle's registered owner's address as given on the state's motor vehicle registration, and

(3)  Clearly state the manner in which the violation may be appealed.

(i)  *Penalties*. Any violation of division (b) or division (c) of this section shall be deemed a noncriminal violation for which a civil penalty shall be assessed and for which no points authorized by R.C. 4507.021 ("Point system for license suspension") shall be assigned to the owner or driver of the vehicle.

(j)  *Ticket Evaluation, Public Service, and Appeals*. The program shall include a fair and sound *ticket-evaluation process that includes review by the vendor and a police officer*, a strong customer-service commitment, and an appeals process that accords due process to the ticket respondent and that conforms to the requirements of the Ohio Revised Code.

(k)  *Appeals*. A notice of appeal shall be filed with the Hearing Officer within twenty-one (21) days from the date listed on the ticket. The failure to give notice of appeal or pay the civil penalty within this time period *shall constitute a waiver of the right to contest the ticket and shall be considered an admission*.

Appeals shall be *heard by the Parking Violations Bureau* through an administrative process established by the Clerk of the Cleveland Municipal Court. *At hearings, the strict rules of evidence applicable to courts of law shall not apply. The contents of the ticket shall constitute a prima facie evidence of the facts it contains*. Liability may be found *by the hearing examiner* based upon a preponderance of the evidence. *If a finding of liability is appealed, the record of the case shall include the order of the Parking Violations Bureau, the ticket, other evidence submitted by the respondent or the City of Cleveland, and a transcript or record of the hearing*, in a written or electronic form acceptable to the court to which the case is appealed.

A decision in favor of the City of Cleveland may be enforced by means of a civil action or any other means provided by the Ohio Revised Code.

(l)  *Evidence of Operation*. It is prima facie evidence that the person registered as the

owner of the vehicle with the Ohio Bureau of Motor Vehicles, or with any other state vehicle registration office, or in the case of a leased or rented vehicle, the "lessee" as defined in division (p), was operating the vehicle at the time of the offenses   * * * .

(Emphasis added.)

{¶22} The adjudicatory hearing procedure established by CCO 413.031(j) through (l), therefore, consists of the following: (1) a representative of the camera vendor and a police officer jointly determine if the photo shows a violation; (2) notice of this determination is sent to the vehicle owner or lessee; (3) if the vehicle owner wants to dispute the determination, he or she files an appeal; (4) at the hearing on the appeal, a person appointed by the city presides; (5) this city-appointed person displays the camera vendor's photo to the vehicle owner or lessee; (6) the city-appointed person determines the sufficiency of the photo as evidence of liability; and then, (7) the decision about liability proceeds to the municipal court as an administrative decision.  In this process, the same non-judicial hearing officer is both the prosecutor and the judge, and the person who contests liability lacks any meaningful ability to present a defense.

{¶23} Article IV, Section 1 of the Ohio Constitution vests the "judicial power" of the state in the Supreme Court and the other inferior courts that are "established by law." Thus, the General Assembly has the exclusive power to create courts, and "[t]he power to create a court carries with it the power to define its jurisdiction."  *Cupps v. Toledo*, 170 Ohio St. 144, 150, 163 N.E.2d 384 (1959); *see also State ex rel. Whitehead v. Sandusky Cty. Bd. of Commrs.*, 133 Ohio St.3d 561, 2012-Ohio-4837, 979 N.E.2d 1193, ¶ 34.

Municipal ordinances, therefore, cannot constitutionally impair or restrict jurisdiction granted to a court by the legislature. *Cupps.*[4]

{¶24} R.C. 1901.20 states in pertinent part:

(A) (1) The municipal court has jurisdiction of the violation of *any ordinance* of *any* municipal corporation within its territory, *unless* the violation is *required* to be handled by a parking violations bureau or joint parking violations bureau *pursuant to Chapter 4521. of the Revised Code*, and of the violation of *any* misdemeanor committed within the limits of its territory. The municipal court has jurisdiction of the violation of a vehicle parking or standing resolution or regulation if a local authority, as defined in division (D) of section 4521.01 of the Revised Code, has specified that it is not to be considered a criminal offense, if the violation is committed within the limits of the court's territory, and if the violation is *not required* to be handled by a parking violations bureau or joint parking violations bureau *pursuant to Chapter 4521. of the Revised Code*. * * *

(Emphasis added.)

{¶25} The statute thus provides that a municipal court's jurisdiction extends to violations of "any" ordinance. The statute's sole exception grants a municipality's "parking violations bureau" jurisdiction "pursuant to Chapter 4521" over vehicle

---

[4]Similarly, municipal courts cannot interfere with jurisdiction granted by the legislature to mayor's courts. *State ex rel. Coyne v. Todia*, 45 Ohio St.3d 232, 543 N.E.2d 1271 (1989).

"parking" violations.

{¶26} R.C. 4521.01(A) defines "parking infractions" as "violations of any ordinance * * * enacted by a local authority that regulates the *standing or parking* of vehicles." (Emphasis added.) Such ordinances also must be "authorized pursuant to section 505.17 or 4511.07 of the Revised Code," or "authorized by this chapter * * * . *Id.* R.C. 505.17 permits a municipality to regulate vehicles to prevent excessive noise and to prevent parking so as to allow access for emergency services. R.C. 4511.07 permits municipalities to regulate "stopping, standing or parking of vehicles." The single word "parking" is not statutorily defined.

{¶27} It is a general rule of statutory construction that words and phrases that neither have been legislatively defined or nor acquired a technical meaning "shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.43. Common usage may be ascertained by reference to a dictionary. *See Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 122 Ohio St.3d 557, 2009-Ohio-3628, 913 N.E.2d 421, ¶ 15-16. With respect to motor vehicles, *Webster's New Collegiate Dictionary* (G & C Merriam Co.1977) defines the word "park" as to "bring to a stop and keep standing at the edge of a public way," or "to leave temporarily on a public way or in a parking lot or garage."

{¶28} In *Columbus v. Webster*, 170 Ohio St. 327, 164 N.E.2d 734 (1960), the Ohio Supreme Court intimated, too, that the word "parking" implies a lack of action, rather than movement. Quoting *People v. Hildebrandt*, 308 N. Y. 397, 126 N.E.2d 377 (1955),

the *Webster* court noted that "parking violations are of a special sort," because "[t]he car is left unattended, there is usually no one present to be arrested and it is not unreasonable to charge to the owner an illegal storage of his vehicle in a public street." *See also Gardner v. Columbus*, 841 F.2d 1272 (6th Cir.1988). Simply put, the fact of a vehicle's stationary presence in a prohibited place cannot generally be reasonably disputed.

{¶29} CCO 413.031, however, makes it a violation of the municipal code for a vehicle operator to *fail* to stop for a red light and to *travel* in excess of the posted speed limit. Perhaps logically, therefore, "violation of CCO 413.031" is not included in CCO 459.01(a)'s definition of what offenses constitute "parking violations." The automated camera system captures this fleeting moment in time. Because the vehicle operator is unaware of the camera's action, he or she cannot adequately mount a challenge to the accuracy of the device.[5]

{¶30} The exhaustive, well-reasoned opinion in *Mendenhall v. Akron*, 117 Ohio

_____

[5]The accuracy of mechanical devices is often decided in municipal court. *See Beachwood v. Joyner*, 8th Dist. Cuyahoga No. 98089, 2012-Ohio-5884, 984 N.E.2d 388. It would seem to be a simple matter for the municipal court to assign a magistrate to contested automated camera cases to determine whether the automated system is scientifically valid, accurate, and reliable enough to legitimately allege a moving violation. *Compare Davis v. Cleveland*, 8th Dist. Cuyahoga No. 99187, 2013-Ohio-2914 (appellant failed to raise issues of system's accuracy before the administrative hearing officer, and facial constitutionality of CCO 413.031 could not be considered in an administrative appeal.) *But see Carroll v. Cleveland*, 522 Fed.Appx. 299, 2013 U.S. App. LEXIS 7178 (6th Cir.2013) (appellants "would have received ample opportunity * * * to present their arguments about * * * constitutionality, first in an administrative proceeding, then in the Ohio court system," but they simply paid their fine). As a practical matter, as Jodka did in this case, many persons who are cited for moving violations simply pay the fine and do not proceed to court.

St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, justified a city's authority as a concurrent police power to impose civil violations for traffic offenses only under "home rule." The court did not thereby give its imprimatur to the quasi-judicial procedure that CCO 413.031(k) and (l) establishes for those persons charged with civil violations who wish to contest their liability. Although the evidence in the record demonstrates the Cleveland Municipal Court expressly relinquished jurisdiction over "parking infractions" in favor of the city in 1985 pursuant to R.C. 4521.04(B), nothing in R.C. 1901.20(A) permits the city to assume jurisdiction to adjudicate matters involving moving traffic violations. The "city has attempted to divest the municipal court of some * * * of its jurisdiction by establishing an administrative alternative without the express approval of the legislature." *Walker v. Toledo*, 6th Dist. Lucas No. L-12-1066, 2013-Ohio-2809, ¶ 36. The city's assumption of that authority violated Art. IV, Sec. 1 of the Ohio Constitution. *Id.* If the Ohio General Assembly had intended to authorize municipalities, rather than municipal courts, to adjudicate violations relating to moving traffic, it would have expressly done so. *See, e.g.,* R.C. 1905.01(A), which defines the jurisdiction of mayor's courts. *State ex rel. Brady v. Howell*, 49 Ohio St.2d 195, 360 N.E.2d 704 (1977).

{¶31} The General Assembly has permitted municipalities to establish by ordinance administrative tribunals that preside over contests of purely internal matters of local self-government. For example, R.C. 713.11 allows municipalities to create boards with the power to "hear and determine appeals from refusal" of building and zoning permits, R.C. 718.11 requires a municipality to create a board of tax appeals to hear issues

concerning municipal income tax obligations, R.C. 737.12 provides for a city's director of public safety to conduct hearings with respect to a police or fire chief's decision to suspend an officers or firefighter, and R.C. 1901.20(A)(1) permits a municipality to acquire jurisdiction over "parking" violations "pursuant to Chapter 4521." In stark contrast, the tribunal created by CCO 413.031(k) for the adjudication of contests of automated traffic camera citations deals with the general and external matter of *moving traffic*.

{¶32} The creation of such a tribunal, an issue not addressed in *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, does not constitute a proper exercise of "concurrent police power" pursuant to R.C. 1901.20(A)(1). Nor is it otherwise a power of "local self-government." This court agrees with *Walker,* 6th Dist. Lucas No. L-12-1066, 2013-Ohio-2809, ¶ 35-36, that the power to adjudicate civil violations of moving traffic laws lies solely in municipal court.

{¶33} Based upon the plain meaning of the words used in R.C. 1901.20(A)(1), in purporting to label moving violations as "parking infractions" so as to deprive the municipal court of jurisdiction over violations of "any ordinance," the procedure set forth in CCO 413.031(k) and (l) violates the Ohio Constitution's Art. IV, Sec.1. The trial court, therefore, improperly granted appellees' motion to dismiss Count 1 of Jodka's complaint. Jodka's first assignment of error is sustained.

{¶34} Jodka's complaint also presented a claim of unjust enrichment. In his second assignment of error, he argues that the trial court improperly dismissed this claim.

Although the *Walker* court held to the contrary, this court does not agree with *Walker* on the question of whether Jodka has standing to pursue such a claim. It is well settled that standing does not depend on the merits of the plaintiff's contention that particular conduct is illegal or unconstitutional. Rather, standing turns on the nature and source of the claim he asserts. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 34, citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Jodka never availed himself of the unconstitutional quasi-judicial process created by CCO 413.031(k) and (l); consequently, he lacks standing to present his claim of unjust enrichment.

{¶35} As this court noted in *Tate v. Garfield Hts.*, 8th Dist. Cuyahoga No. 99099, 2013-Ohio-2204, ¶11-12:

Standing is a *jurisdictional prerequisite* that must be resolved before reaching the merits of a suit. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 23. To establish standing, the party invoking the court's jurisdiction must establish that he suffered (1) an injury that is (2) fairly *traceable to the defendant's allegedly unlawful conduct*, and (3) is *likely to be redressed* by the requested relief. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

To have standing [to pursue a claim], a plaintiff must have a personal stake

in the outcome of the controversy and have suffered *some concrete injury* that is *capable of resolution* by the court. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75, 25 Ohio B. 125, 495 N.E.2d 380 (1986). It is *not sufficient* for the individual to have *a general interest in the subject matter of the action*. The plaintiff must be the party who will be *directly* benefitted or injured by the outcome of the action. *Shealy v. Campbell*, 20 Ohio St.3d 23, 24, 20 Ohio B. 210, 485 N.E.2d 701 (1985). The purpose behind this "real party in interest rule" is ""* * * to enable the defendant to avail himself of *evidence and defenses that the defendant has against the real party in interest*, and to assure him *finality of the judgment*, and that he will be protected against another suit brought by the real party at interest on the same matter.'" *Id.*, quoting *In re Highland Holiday Subdivision*, 27 Ohio App.2d 237, 240, 273 N.E.2d 903 (4th Dist.1971).

(Emphasis added.)

{¶36} In *Carroll v. Cleveland*, 522 Fed.Appx. 299, 2013 U.S. App. LEXIS 7178 (6thCir.2013), the court made the following pertinent observation:

> * * * The citations that Appellants received clearly indicated that paying the fine, rather than contesting the citation, was an admission of liability. Thus, by paying, each Appellant admitted that he or she committed the alleged traffic violation, *without asserting any defenses*. * * *

{¶37} Jodka admitted in his complaint that he simply paid the citation the city issued to him. Thus, Jodka neither placed himself under the purported authority of the

quasi-judicial process the city instituted in CCO 413.031 nor contested the ordinance's constitutionality during such process. *Carroll.* This fact made Jodka an inappropriate person to assert a claim that provisions of CCO 413.031 unconstitutionally stripped the municipal court of jurisdiction over his offense.

{¶38} Jodka's second assignment of error is overruled.

{¶39} Jodka argues in his third assignment of error that the trial court should not have granted ACS's motion for summary judgment after the court had "severed" that motion from appellees' motions to dismiss his complaint. This court declines to address this assignment of error for two reasons.

{¶40} First, Jodka supplies no authority to support his argument as required by App.R. 16(A)(7). App.R. 12(A)(2). Second, in light of this court's disposition of his first and second assignments of error, this assignment of error is moot. App.R. 12(A)(1)(c).

{¶41} The trial court's judgment is affirmed in part and reversed in part. The provisions in CCO 413.031 that purport to create a quasi-judicial tribunal to handle contested automated camera traffic citations violate Art. IV, Sec. 1 of the Ohio Constitution. Therefore, that portion of the trial court's order is reversed, and this case is remanded for further proceedings.

It is ordered that appellant and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into

execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS
IN PART AND DISSENTS IN PART
(SEE ATTACHED OPINION)

SEAN C. GALLAGHER, P.J., CONCURRING IN PART AND DISSENTING IN
PART:

**{¶42}** This case presents issues that I believe defy resolution at the intermediate

appellate level. This is yet another case that reflects a need for legislative policy-making

and oversight over modern technological advancements implemented by municipalities in

law enforcement. As we are seeing with automated traffic camera ordinances, such

measures often result in protracted litigation within the legal system. It is not the

function of the courts to engage in policy matters, yet the issues that are appearing

involve matters that should have been reviewed by the legislature before implementation.

**{¶43}** This case is among the increasing number of lawsuits challenging municipal

ordinances that authorize the use of automated traffic cameras to impose civil penalties

for red light and speeding violations. In the case of the Cleveland ordinance, the city,

without any legislative oversight, decided to implement an automated traffic

enforcement system and established an administrative review process under the parking violations bureau.

{¶44} While the General Assembly has provided jurisdiction to municipal courts over criminal traffic-code violations, R.C. 1901.20(A)(1), and has allowed for the establishment of a parking violations bureau in a municipality for handling local, noncriminal "parking infractions," R.C. 4521.04, there are no provisions concerning the implementation of automated traffic enforcement systems. Moreover, there is nothing within R.C. Chapters 1901, 4511, or 4521, or elsewhere in the Ohio Revised Code, that specifically allows a municipality to establish a civil automated traffic enforcement system with administrative procedures that are handled by a parking violations bureau. As the Ohio Supreme Court has recognized, "although the General Assembly has enacted a detailed statute governing criminal enforcement of speeding regulations, it has not acted in the realm of civil enforcement." *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 32. The court in *Mendenhall* determined that the creation of a civil automated traffic enforcement system does not exceed a municipality's home rule authority, provided that the municipality does not alter statewide traffic regulations. *Id*. at syllabus.

{¶45} The Ohio Supreme Court recently granted discretionary review in *Walker v. Toledo*, 6th Dist. Lucas No. L-12-1056, 2013-Ohio-2809, 994 N.E.2d 467, *discretionary appeal allowed*, __ Ohio St.3d __, 2013-Ohio-5285, wherein the Sixth District determined that a Toledo municipal ordinance was unconstitutional under the Ohio

Constitution, Article IV, Section 1 because it "attempted to divest the municipal court of some, or all, of its jurisdiction by establishing an administrative alternative without the express approval of the legislature."  The lead opinion in this case follows that view.

{¶46} However, unlike *Walker*, the lead opinion finds the plaintiff lacked standing to present his claim of unjust enrichment because he did not avail himself of the unconstitutional quasi-judicial process created by the ordinance.  In *Walker*, the court determined that an unjust enrichment claim could be pursued by a defendant who had paid the penalty for a red-light camera violation.  I agree with *Walker* in that regard.

{¶47} There are no provisions providing for a reduction to judgment when a citation is paid, or when a citation is unchallenged but remains unpaid.  Additionally, with minimal fines involved, there is little incentive for a person to challenge the citation, let alone to engage in protracted litigation.  More significantly, even accepting that the parking violations bureau has quasi-judicial authority to review whether a violation occurred, there is no authority for the parking violations bureau to hear unjust enrichment claims or constitutional challenges against the ordinances.  Therefore, it is my view that the unjust enrichment claim cannot be barred for lack of standing or by res judicata.