DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Tommy Higgins, appeals the judgment of the Summit County Court of Common Pleas which restrained him from further activities as Pastor of appellee, Greater Temple Christian Church, and further appointed a receiver to protect appellee's assets and avoid continued threats and danger to appellee's membership. This Court vacates the judgments for lack of subject matter jurisdiction.
 I. {¶ 2} On September 15, 2005, appellee filed a complaint for injunction, praying for an order restraining appellant from entering appellee church, destroying appellee church by forced entry and carrying on any business on appellee's premises. Appellee alleged it is a non-profit organization, but the complaint failed to identify any individual by whom the complaint was brought on appellee's behalf. On the same day, appellee church filed a motion for temporary restraining order, requesting an order restraining appellant from breaking the locks and unlawfully entering church premises pending resolution of the case. Desiree Morgan filed an affidavit in support of the motion for temporary restraining order on September 15, 2005. In her affidavit, Ms. Morgan averred that she is "one of the leaders" of appellee church. She further averred that the church leadership appointed appellant as interim pastor, but that appellant exceeded his scope of authority. She averred that appellant "was given notice" that he was terminated as interim pastor but that appellant refused to accept his termination and threatened to break down the doors of the church, if the locks were changed.
 {¶ 3} On September 21, 2005, appellant filed a motion to dismiss the complaint. Appellant asserted, in part, that appellee failed to demonstrate that Desiree Morgan had the authority to act on behalf of the church. Appellee failed to respond to appellant's motion to dismiss, and the trial court never issued a ruling on the motion. On October 14, 2005, appellant filed his answer, asserting lack of standing as a defense to the complaint.
 {¶ 4} On September 30, 2005, the court held a hearing at which the court noted that
"[t]he record should reflect that in an effort to resolve issues with respect to a temporary restraining order, preliminary and permanent injunction, the parties have agreed to the status of [appellant] to be determined by agreement."
Appellant's counsel asserted that the parties had agreed to retain Reverend Dennis Butts as a mediator, who would determine church membership and then conduct a vote regarding the employment status of appellant at the church. Appellant's counsel further asserted that the parties would certify the results of the vote in court on October 11, 2005 and that that would resolve the lawsuit. In addition, appellant's counsel asserted that any collateral issues such as return of church property and release of accounts would be resolved on October 11, 2005, as well. Appellee's counsel concurred in the understanding of the parties' agreement.
 {¶ 5} The trial court then inquired of appellant, whether he would agree to the terms asserted by his counsel. Appellant requested the opportunity to "say something," but his attorney cut him off, stating, "No, yes or no. Just yes, you agree with it —" Whereupon a discussion was held off the record. Again on the record appellant asserted that he agreed to be bound by the enunciated terms of the agreement.
 {¶ 6} On October 28, 2005, the trial court issued an order on the complaint. The trial court reiterated that the parties agreed that Reverend Butts would develop a list of eligible church voters and then conduct an election regarding the status of appellant as pastor of the church. Before Reverend Butts certified the list of eligible voters, he presented the list to counsel for both parties.[1] No party objected to the list. Reverend Butts held an election, and the majority of voters decided against maintaining appellant as pastor. The voter list and election results were then filed with the court. Whereupon, the trial court granted the relief prayed for in appellee's complaint and ordered that appellant be restrained from further activities as pastor of appellee church, effectively ousting appellant from his office as the church's pastor. The trial court's October 28, 2005 order disposed of appellee's complaint.
 {¶ 7} On November 1, 2005, appellant filed a motion for clarification of the October 28, 2005 order, requesting that the trial court make the dismissal date of the case retroactive to October 11, 2005 pursuant to the parties' agreement.[2]
Appellant premised his motion on appellee's counsel's failure to appear at the October 11, 2005 certification hearing. Appellant further requested that the trial court address the return of church property and the release of church funds and accounts.[3] Appellee responded that clarification was not warranted, as the trial court had informed appellant that no church property was stolen. On November 3, 2005, the trial court issued a nunc pro tunc order clarifying its October 28, 2005 as follows:
"It is hereby the order of this Court that the Defendant, Tommy Higgins, is restrained from further activities as Pastor of the Plaintiff, Greater Temple Christian Church, subject to any lawful action taken by the Plaintiff to reverse this Order, which action shall be subject to approval of this Court. The Court retains jurisdiction to implement any portion of this Order."
 {¶ 8} On November 2, 2005, appellee moved the court for an order "returning the church to its original leadership team prior to when Pastor Higgins was installed as the Interim Pastor." Appellee alleged that appellant broke into the church, held a revival and officiated on October 30, 2005. Appellant opposed the motion as nonsensical and inconsistent with separation of Church and State. The trial court found the motion and response moot based upon the court's October 28, 2005 and November 3, 2005 orders.
 {¶ 9} On November 16, 2005, appellee filed several motions, to wit: (1) a motion to deposit in escrow insurance claims proceeds received by appellant and paid to the church; (2) a motion to void a November 13, 2005 election conducted by appellant, by which appellant was purportedly elected as the permanent pastor of appellee church; (3) a motion to appoint a receiver due to tension and volatility at the church, as well as out of concern that the church is being used for illegal activities; (4) a motion to temporarily close the church due to such concerns; and (5) a motion to show cause and for contempt, because appellant had been acting as pastor and conducting the business of the church.
 {¶ 10} On December 2, 2005, appellant filed another motion to dismiss the action on the bases of lack of subject matter jurisdiction and appellee's lack of standing to prosecute.
 {¶ 11} On December 5, 2005, Marceia Vinson, Trustee/Financial Officer of appellee church, filed a certification of vote of pastors and trustees, in which she attached November 20, 2005 election results, whereby the church members purportedly elected appellant as the church's pastor.
 {¶ 12} On December 9, 2005, the trial court issued an "Agreed Order," in which it appointed a receiver who was responsible for appointing a management team for appellee church. The court ordered that the management team would be responsible for the day-to-day business operations of the church "during the pendency of this case." The court ordered that the management team would consult with the receiver to resolve issues. If managerial issues could not be resolved, then the receiver was directed to contact the court, which would resolve any disputed issues. The trial court scheduled a status conference concerning "the future management, operation and control of the Church" and directed anyone who disagreed with the court's order to consult with an attorney and move to intervene in the case. The trial court ordered that the receivership would continue "until all such issues are resolved." The trial court premised its belief that the appointment of a receiver was in the best interest of appellee church "upon allegations not on the record in the instant case[.]"
 {¶ 13} On December 19, 2005, appellant filed a notice of appeal. Appellant raises four assignments of error for consideration. This Court addresses the second assignment of error first, as it is dispositive of the appeal.
 II. SECOND ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED AS A MATTER OR LAW AND TO THE PREJUDICE OF APPELLANT IN ITS CONSIDERATION OF MATTERS BEYOND ITS SUBJECT MATTER JURISDICTION."
 {¶ 14} Appellant argues that the trial court lacked subject matter jurisdiction to address appellee church's dispute. This Court agrees.
 {¶ 15} Appellant argues that the trial court lacked jurisdiction to address appellee's complaint because the controversy involved ecclesiastical, rather than secular, issues. This Court need not address the merits of appellant's specific argument because we find that the trial court lacked subject matter jurisdiction for another reason.
 {¶ 16} In addressing the issue of subject matter jurisdiction, this Court has stated:
"It is well settled that a judgment rendered by a court that lacks jurisdiction is void ab initio. Patton v. Diemer (1988),35 Ohio St.3d 68, 70. Further, subject matter jurisdiction may not be conferred upon a court by agreement of the parties, nor may lack of subject matter jurisdiction be waived. State ex rel.Lawrence Dev. Co. v. Weir (1983), 11 Ohio App.3d 96, 97. Lack of subject matter jurisdiction may also be the basis for mandatory sua sponte dismissal by the courts. Id." (Emphasis omitted.)Freeland v. Pfeiffer (1993), 87 Ohio App.3d 55, 58.
Accordingly, this Court may consider whether the trial court retained subject matter jurisdiction over this matter irrespective of the specific argument presented by appellant. In fact, this Court is persuaded by appellant's argument in its second motion to dismiss, filed December 2, 2005, which the trial court declined to address prior to appellant's filing of his notice of appeal.
 {¶ 17} This Court finds that appellee's complaint presents an action in the nature of quo warranto relief. This Court has held that "quo warranto is the proper and exclusive remedy for challenging a person who unlawfully holds an office in a corporation created by the authority of the state." St. NikolaMacedonian Orthodox Church v. Zoran, 9th Dist. No. 22666,2006-Ohio-2561, at ¶ 8, citing Hendershot v. Conner (1974),48 Ohio App2d 335, 337. See, also Trinity Church v. Wardens andVestrymen (1881), 3 Ohio Dec.Reprint 524 (stating that "[t]he proceedings in quo warranto are intended to try the title of persons claiming the office."). We further held that a writ of quo warranto is an extraordinary remedy, which "provides a remedy which cannot be obtained in any other type of proceeding: a judgment of ouster." Id. at ¶ 9, citing Ohio Hosp. Assn. v.Community Mut. Ins. Co. (1987), 31 Ohio St.3d 215, 218. It has been said that
"Courts of equity do not entertain jurisdiction over corporate elections for the purpose of determining questions pertaining to the right or title to corporate offices, since such questions are properly cognizable only in courts of law, the appropriate remedy being by proceedings at law, in the nature of a quo warranto." (Emphasis omitted.) Trinity Church, supra.
This Court must look to the "core of relief sought" to determine whether the action is in the nature of quo warranto.Zoran at ¶ 9, citing Hendershot, 48 Ohio App2d at 337 and N.Dayton First Church of God v. Berger (Oct. 27, 2000), 2d Dist. No. 18171.
 {¶ 18} There is no dispute that appellee church is a corporation created by the authority of the state.[4] In this case, appellee admitted in its complaint that appellant had been appointed as the interim pastor of the church. Appellee further alleged that appellant continued to perform the business of a pastor despite appellant's alleged termination. Appellee sought to permanently restrain appellant from conducting such business on church premises. In addition, the trial court, in granting relief to appellee on its complaint, ordered that appellant be restrained "from further activities as Pastor" of appellee church. Because the "core of relief sought" was in the nature of an ouster of appellant as the pastor of appellee church, appellee's action was in the nature of quo warranto relief.
 {¶ 19} The authority to hear an action for a writ of quo warranto is granted in Sections 2 and 3, Article IV of the Ohio Constitution. Section 2, Article IV of the Ohio Constitution states, in relevant part:
"(B)(1) The supreme court shall have original jurisdiction in the following:
"(a) Quo warranto[.]"
Section 3, Article IV of the Ohio Constitution states, in relevant part:
"(B)(1) The courts of appeals shall have original jurisdiction in the following:
"(a) Quo warranto[.]"
Jurisdiction for a quo warranto action is further statutorily established in R.C. 2733.03, which states, in pertinent part:
"An action in quo warranto can be brought only in the supreme court, or in the court of appeals of the county in which the defendant, or one of the defendants, resides or is found, or, when the defendant is a corporation, in the county in which it is situated or has a place of business."
In addition, the Ohio Supreme Court has held that "the courts of common pleas are without jurisdiction over actions in quo warranto." State ex rel. Battin v. Bush (1988),40 Ohio St.3d 236, 238, citing State ex rel. Maxwell v. Schneider (1921),103 Ohio St. 492.
 {¶ 20} Appellee filed an action in the common pleas court in the nature of quo warranto, seeking appellant's ouster as pastor of the church. The trial court lacked jurisdiction to address the action in the nature of quo warranto. Because the trial court lacked subject matter jurisdiction over the action, the trial court's orders are void ab initio and must be vacated. Appellant's second assignment of error is sustained.
 FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT BY ALLOWING PERSONS WHO WERE NOT THE REAL PARTIES IN INTEREST AND WHO DID NOT HAVE AUTHORITY OR STANDING TO PROSECUTE A CASE IN THE NAME OF APPELLEEC-HURCH."
 THIRD ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT IN PERMANENTLY ENJOINING APPELLANT FROM APPELLEE-CHURCH."
 FOURTH ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT IN ITS APPOINTMENT OF A RECEIVER AND MANAGERIAL TEAM."
 {¶ 21} Because this Court has determined that the trial court lacked subject matter jurisdiction to address the action, we need not consider appellant's remaining assignments of error and we decline to do so.
 III. {¶ 22} Appellant's second assignment of error is sustained. This Court declines to address the remaining assignments of error. The judgments of the Summit County Court of Common Pleas are vacated.
Judgments vacated.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
Slaby, P.J. Whitmore, J. concur.
[1] The list included several people whose membership the church, under appellant's leadership, had terminated prior to the filing of the complaint. Desiree Morgan and Ted Williams, who both purported to have authority to act on behalf of appellee church in this matter, were on the list of eligible voters despite having had their memberships previously terminated.
[2] The parties had agreed that the election results would be certified in court on October 11, 2005, but appellee's counsel failed to appear in court that day. Accordingly, the trial court was unable to certify the results until October 28, 2005.
[3] At the September 30, 2005 hearing, appellant's counsel asserted that any collateral issues like the return of church property and the release of accounts would be addressed at the October 11, 2005 certification hearing.
[4] Attached to appellant's December 2, 2005 motion to dismiss are documents issued by the Ohio Secretary of State, identifying appellee church as a corporation.