[Cite as *State ex rel. Gmoser v. Village at Beckett Ridge Condo. Owners' Assn.*, 2016-Ohio-8451.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO ex rel. MICHAEL T. GMOSER, PROSECUTING ATTORNEY, | : | |
| | : | CASE NO. CA2016-02-035 |
| Relator, | : | |
| | : | O P I N I O N |
| - vs - | | 12/28/2016 |
| | : | |
| VILLAGE AT BECKETT RIDGE CONDOMINIUM OWNERS' ASSOCIATION, INC., et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

ORIGINAL ACTION IN QUO WARRANTO

Michael T. Gmoser, Butler County Prosecuting Attorney, Rogers S. Gates, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for relator

Finney Law Firm, LLC, Bradley M. Gibson, Brian C. Shrive, 4270 Ivy Pointe Blvd., Suite 225, Cincinnati, Ohio 45245 and Graydon Head & Ritchey LLP, Lisa C. Diedrichs, Amanda J. Penick, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202, for respondents

**Per Curiam**.

{¶ 1} This original action for writ of quo warranto challenges the legal right of three individuals to serve as board members of a home owners' association.

{¶ 2} The Village at Beckett Ridge is a condominium development consisting of 216 residential units. The Beckett Ridge Condominium Owners' Association, Inc. ("Association")

acts as the unit owners' association for the development and Towne Properties Asset Management Company ("Towne") provides management services on behalf of the Association. The Association is led by a Board of Managers, consisting of five individuals who are condominium owners ("board members"). The board members are elected by a vote of the owners, with elections occurring every year at an annual meeting. Each board member serves a two-year term, with elections staggered so that either two or three seats are open each year.

{¶ 3} In March 2015, three of the Association's five board seats were open for election and Joseph Vultaggio, Sharon Kollasch and Jeffrey Hack were elected to the open positions. The other two board positons were occupied by Mark Morris and Pete Eschmeyer. All five members conducted a board meeting on April 23, 2015 and a President, Vice-President, Secretary and Treasurer were elected.

{¶ 4} At a board meeting on May 28, 2015, Morris, the board president, indicated that he had been provided with a petition signed by 57 condominium owners, requesting a recall of the March 2015 election. According to the minutes of the May meeting, Morris indicated that as a result of the petition, Vultaggio, Hack and Kollasch are "now off the Board and this process taken is official." According to the minutes, the three newly-elected board members objected to this action, and Morris then adjourned the meeting. Evidence in the record indicates the reason for the removal was that Vultaggio, Hack and Kollasch were not living in their units and there was concern regarding nonresidents serving on the board.

{¶ 5} The three board members disputed the removal and appeared for a scheduled meeting on June 25, 2015, but found that the meeting had been cancelled. Nevertheless, the three members held a meeting, but they were subsequently advised by Morris and Towne that the validity of that meeting would not be recognized.

{¶ 6} On June 30, 2015, Vultaggio's attorney wrote a letter to Morris, indicating that

the removal of the three board members was not properly conducted, because the Association bylaws do not include a mechanism for recalling an election. The letter indicated that, according to the bylaws, a board member can only be removed after being given an opportunity to speak at a meeting. The letter referred to the bylaws and stated that after an opportunity to speak, a board member can then only be removed with a 75 percent vote of the members in good standing.

{¶ 7}   The Association sent a letter to owners on July 6, 2015 indicating that the recall effort was successful and three new members would need to be elected at an August meeting. However, a second letter, dated the following day, indicated that a special meeting was scheduled for July 16 to address the recall request and to allow the three board members an opportunity to speak regarding the removal. These letters were sent to only certain residents. At the July 16 meeting, the three board members spoke, but no vote was taken on the issue.

{¶ 8}   Around July 21, 2015, the association sent correspondence to Vultaggio, indicating he had been removed from the Board. The removal was based on 158 ballots and an affidavit from Nancy Little, who was the Board Secretary prior to the March 2015 election of the three new board members. The minutes of an August 27, 2015 board meeting indicate that all three new board members had been removed. These minutes also state that Nancy Little and Myra Clifton "resumed their member positions" after the removal, and that the remaining vacant position would be filled at the annual meeting on March 16, 2016.

{¶ 9}   The three removed board members continued to dispute their removal and appeared at a scheduled board meeting on July 23, 2015. A posted notice indicated this meeting was cancelled due to a lack of a quorum. However, the three board members appeared for the meeting and believed they constituted a quorum.

{¶ 10}   Continuing to dispute the removal, Vultaggio filed a complaint in Butler County

Common Pleas Court on August 4, 2015. His complaint requested that the common pleas court issue a declaratory judgment finding that the actions to remove Vultaggio, Kollasch and Hack as members of the board were invalid and that the replacement of the three board members was invalid.

{¶ 11} On October 1, 2015, the common pleas court dismissed Vultaggio's complaint, finding that the substance of the complaint was for quo warranto, which can only be brought in the court of appeals or the Ohio Supreme Court. The Butler County Prosecuting Attorney then filed this quo warranto action on February 22, 2016, requesting this court to find that the attempts to remove Vultaggio, Kollasch and Hack from the Board failed to comply with Ohio law and the Association's bylaws, and that the three members are therefore entitled to be returned to their offices as board members.

{¶ 12} Vultaggio filed a cross-claim to the quo warranto petition. In his cross-claim, Vultaggio explained that this controversy began when he questioned Morris regarding the quality and professionalism of the cleaning company workers in the complex. According to Vultaggio, when Morris told him to "mind his own business," Vultaggio began investigating and discovered that Morris owned the cleaning company. This discovery, along with further altercations between Vultaggio and Morris, led to Vultaggio's decision to run for a seat on the board, and the ongoing friction between the two was the impetus for the removal actions. In his cross-claim, Vultaggio requests declaratory judgment, indemnification, costs and attorney fees.

{¶ 13} The association's annual meeting was held on March 24, 2016. Although only two of the board member terms, those of Morris and Eschmeyer, were expiring, the Association held an election for all five board positions. This action was an effort by the Association to end the ongoing dispute regarding whether Vultaggio, Kollasch and Hack had been properly removed from their board seats. Vultaggio, Kollasch and Hack were on the

ballot and voted in the election, but did not finish in the top five.

**Governing Law**

{¶ 14}   The owners' association is a nonprofit corporation under the laws of the state of Ohio and as such, is subject to the requirements of R.C. Chapter 1702.  The association is governed by bylaws which provide rules for the association, including rules regarding the election of board members and the process for their removal.

{¶ 15}   Quo warranto is an extraordinary remedy in which the legal right to hold office is challenged.  *State ex rel. Battin v. Bush*, 40 Ohio St.3d 236, 238-239 (1988).  "A writ of quo warranto is the proper and exclusive remedy for determining the legal right of an officer of an incorporated nonprofit association to hold office."  *Carlson v. Rabkin*, 152 Ohio App.3d 672, 2003-Ohio-2071 (1st Dist.); see also *Greater Temple Christian Church v. Higgins*, 9th Dist. Summit No. 23022, 2006-Ohio-3284.

{¶ 16}   When the right to an office in a private corporation is contested, the quo warranto action must be brought by the attorney general or a prosecuting attorney.  *State ex rel. Salim v. Ayed*, 141 Ohio St.3d 129, ¶ 11-12, 2014-Ohio-4736.  As mentioned above, this action was brought by the Butler County Prosecuting Attorney and Vultaggio filed a cross-claim to the petition.

{¶ 17}   Quo warranto is an extraordinary legal remedy.  *State ex rel. Herbert v. Standard Oil Co.*, 138 Ohio St. 376 (1941).  Sections 2 and 3, Article IV, of the Ohio Constitution give the Ohio Supreme Court and the Courts of Appeal original jurisdiction to consider a petition for a writ of quo warranto.  *Battin* at 238.  The writ itself is a high prerogative writ and is granted, as an extraordinary remedy, where the legal right to hold an office is successfully challenged.  *Id.*  The actual remedy afforded is that of ouster from the office.  *Id.*; R.C. 2733.14.  Because a quo warranto action challenges the actual right to an office, "it follows that it can afford no relief for official misconduct and cannot be employed to

test the legality of the official action of public or corporate officers." *United States ex rel. State of Wisconsin. v. First Fed. Sav. And Loan Ass'n.*, 248 F.2d 804, 808 (7th Cir.1957), cert denied, 355 U.S. 957, 78 S.Ct. 543 (1958).

{¶ 18}  In a quo warranto action against a person for usurping a corporate office, the court will render judgment on the rights of the claimants to hold that office, and oust and exclude a usurper from the office. R.C. 2733.08 and 2733.14.

**Were Vultaggio, Kollasch and Hack Properly Removed from the Board?**

{¶ 19}  The association's bylaws provide for a board of five members to govern the association.  The board is comprised of unit owners or their spouses who are elected, with each unit owner who is in good standing entitled to one vote.  The bylaws provide that "[e]ach Manager [board member] serves for a two-year term; unless resignation, removal from office or death."  Bylaws Sec. 3.3.

{¶ 20}  With regard to removal of a board member, the bylaws provide the following:

> An elected manager whose removal has been proposed by a Unit Owner shall be given an opportunity to speak at an annual or special meeting of Unit Owners, after which that Manager may be removed, with or without cause, by the vote of the Unit Owners entitled to exercise at least seventy-five percent (75%) of the voting power of all Unit Owners in good standing.

Bylaws Sec. 3.5.

{¶ 21}  As discussed above, several attempts were made to remove Vultaggio, Kollasch and Hack from the board.  The first attempt, by petition, clearly did not meet the requirements for removal set forth in the association's bylaws, as the three members were not given an opportunity to speak prior to the alleged removal, and only 57 owners signed the petition.

{¶ 22}  Next, a special meeting was called and the three board members were given the opportunity to speak at the meeting, as required in the bylaws.  No vote was taken at the

meeting, and ballots were instead given to Little, the former board secretary. These ballots provided for a "yes" or "no" vote to the following statement:

> I want the vote taken at the Association's 2015 annual meeting recalled and the three members that were elected removed as Board members of the Association and the documents changed to say "a unit is required to be Owner occupied in order to serve as a Board member for the Association.["]

{¶ 23} The ballots are unsigned, and do not identify the unit owner casting the vote. The ballots received by Little were 158 "yes" votes. According to an affidavit from president Morris, he previously supplied Little with information on the owners that were in good standing. According to an exhibit submitted to this court, there were ten delinquent accounts at that time. Accordingly, 206 owners were entitled to vote, and the 158 votes cast equaled the 75 percent needed to remove the three board members under the bylaws.

{¶ 24} However, there are several problems with the manner in which the voting occurred. As discussed above, no vote was taken at the special meeting called to address recall of the three board members. Instead, votes were hand-delivered or mailed to Little. With regard to voting outside of a meeting, the bylaws state that "[a] Unit Owner may vote by mail on any matter voted on at any meeting of Unit Owners, by written vote mailed or personally delivered to the Secretary of the Association within the period seven days before the date of the meeting." Bylaws Sec. 2.2.3. Thus, the bylaws provide for votes to be mailed or personally given to the secretary, but only in regard to a matter which is voted on at a meeting of unit owners. The bylaws do not provide for a right to vote solely by mail or hand delivery in the absence of a meeting.

{¶ 25} Moreover, because the three board members had not yet been removed, Little was not the board secretary at the time, and was not even a board member when the votes were delivered to her. Little was not appointed to the board until after removal of the three board members. Therefore, the delivery of votes to Little did not meet the requirements of

the bylaws that written votes be delivered to the board secretary.

{¶ 26}  R.C. 1702.25 allows for members to take action without a meeting, but, only with a signed writing by the members which is filed or entered in the records:

> Unless the articles or the regulations prohibit the authorization or taking of any action of the incorporators, the members, or the directors without a meeting, any action that may be authorized or taken at a meeting of the incorporators, the members, or the directors, as the case may be, may be authorized or taken without a meeting with the affirmative vote or approval of, and in a writing or writings signed by, all of the incorporators, all of the members, or all of the directors, as the case may be, who would be entitled to notice of a meeting for that purpose, or, in the case of members, any other proportion or number of voting members, not less than a majority, that the articles or the regulations permit.  Any such writing shall be filed with or entered upon the records of the corporation.

Clearly, the voting outside of a meeting in this case did not meet this requirement as there are no signed writings by members authorizing a vote to remove the three board members outside of a meeting.

{¶ 27}  Accordingly, we find that the vote to remove Vultaggio, Kollasch and Hack from the board was not properly conducted.  As such, Vultaggio, Kollasch and Hack were not properly removed from the board and remain board members.

**Election of New Board Members – Estoppel or Waiver?**

{¶ 28}  As discussed above, at the annual meeting on March 24, 2016, the Board held an election for all five board member positions.  Although only two positions were open, minutes of the meeting indicate:

> This year's voting cycle was originally for the purpose to elect two Owners to the Board of Trustees, but because of the ongoing legal challenges made by an Owner (Joseph Vultaggio) who has repeatedly disagreed with the successful efforts conducted to recall the vote taken at the 2015 annual owners meeting, the Association was advised by legal counsel, that in an effort to make the voting process fair and legal that all five Board seats would be made available for election, this action would afford Mr. Vultaggio, Ms. Kollasch and Mr. Hack the opportunity to re-run

for the sets [sic] they were recalled from in 2015 if they so choose.

{¶ 29} Respondents argue that, because of participation in the March 24 election, Vultaggio, Kollasch and Hack waived their right to contest their removal from the board and are estopped from contesting their right to board positions. They argue that Vultaggio, Kollasch and Hack did nothing to prevent the election from going forward, ran for board positions and petitioned other owners to vote for them, and that these actions were inconsistent with the relief now sought.

{¶ 30} One effectuates a waiver by voluntarily relinquishing a known right. *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Dirs.*, 75 Ohio St.3d 611, 616 (1996). "Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right[,]" and may be enforced by the person with a duty to perform and who changed their position as a result of the waiver. *Chubb v. Ohio Bur. Of Workers' Comp.*, 81 Ohio St.3d 275, 1998-Ohio-628, ¶ 4, citing *Andrew v. State Teachers Retirement Sys. Bd.*, 62 Ohio St.2d 202, 205 (1980).

{¶ 31} Estoppel is a separate and distinct doctrine, as estoppel does not require one to intentionally relinquish a right, but rather requires conduct by both parties. *Chubb* at ¶ 5. "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34 (1994). Moreover, the purpose of the doctrine is to prevent actual or constructive fraud and to promote the ends of justice. *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990).

{¶ 32} Nothing in the record regarding the March 24, 2016 election indicates that Vultaggio, Kollasch or Hack intended their participation in the election to waive their right to

contest the validity of their removal from the board. Nor is there any indication that both parties intended this election to be the sole resolution to the controversy. Clearly, the statement in the meeting minutes indicated that the Association hoped the election would end the controversy. However, nothing indicates that the three removed board members in any way considered their participation in the election as the sole means to end the dispute.

{¶ 33} Vultaggio's complaint for declaratory action was pending at the time of the election, and nothing in the record indicates an agreement between the parties to dismiss the case in return for participation in the election. Moreover, there was no agreement on behalf of the three board members to forego further attempts to resolve their removal in exchange for participation in this election.

{¶ 34} The vote appears to be a one-sided attempt by the Association to end the controversy that would have happened with or without the three board members' participation. Accordingly, we find the three board members' participation in this vote did not waive their right to contest their removal from the board, nor are they estopped from asserting this right.

**Additional Issues**

{¶ 35} Vultaggio's cross-claim includes a request for declaratory action. He requests that this court issue an order declaring that Morris, Echmeyer, Clifton, Little and Towne Properties acted in bad faith pursuant to section 7 of the bylaws, and an order declaring that any action taken by the illegitimate board is invalid and void, including the provision that non-owners cannot be board members. Vultaggio also requests indemnification, costs and attorney fees.

{¶ 36} Together, the Association, Morris, Eschmeyer, Clifton, Little, and Towne Properties have moved to dismiss Vultaggio's cross-claims on the basis that this court lacks subject matter jurisdiction over these claims. They argue that this court has limited original

jurisdiction which cannot be extended through the inclusion of additional claims when an original action brought in this court.

{¶ 37} As previously mentioned, Vutlaggio initially brought an action in the Butler County Court of Common Pleas requesting a declaratory judgment that the actions to remove Vultaggio, Kollasch and Hack as members of the board were invalid. He also requested that the court order the association, the board, Towne and Morris to comply with the bylaws and laws of the state of Ohio, and requested costs, attorney fees, and all other legal or equitable relief available. Vultaggio now argues that the lower court determined his claims were intertwined with quo warranto, and because his request for declaratory action arises out of the same occurrence or facts as this quo warranto action, this court has jurisdiction pursuant to Civ.R. 13(G).

{¶ 38} There is considerable interplay between the facts involved and the relief requested in an action for declaratory judgment and petition for quo warranto. In considering whether a "party seeks relief that must be pursued through a quo warranto action, courts identify the core issues raised by the parties for judicial resolution. If the principal or primary issue is the validity of the election of corporate officers, then the action, no matter how pleaded, is actually a quo warranto action." *Mosque v. Salim,* 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746, ¶ 20. "[C]ourts examine the core of relief sought and/or granted. If that relief is a declaratory judgment stating which claimant has a right to office and/or an injunction ordering the removal of a person from office, then the action must be pursued through a quo warranto action." *Id.* Vultaggio's request that the common pleas court issue a declaratory judgment holding that the actions to remove Vultaggio, Kollasch and Hack as members of the board were invalid and that the replacement of the three board members was invalid, was in effect, a request for relief that could only be granted by a writ of quo warranto.

{¶ 39} However, in his cross-claim before this court, Vultaggio requests additional declaratory relief beyond that of his claims in common pleas court. The cross-claim requests that this court find respondents acted in bad faith pursuant to section 7 of the bylaws, and issue an order declaring that any action taken by the "illegitimate board" from May 28, 2015 to the present is invalid and void.

{¶ 40} In a similar case involving a writ of prohibition, the Ohio Supreme Court considered whether it had jurisdiction over a counterclaim in an original action. *State ex rel. Coyne v. Todia*, 45 Ohio St. 3d 232 (1989). The court found the counterclaim, a request for declaratory judgment, was outside the court's original jurisdiction, quoting a previous case in which the court determined, "courts of appeals have no jurisdiction to hear declaratory judgment actions because that would extend their constitutionally declared jurisdiction over original actions." *Id.* at 237. The court further found that '"neither the Civil Rules nor statutes can expand this court's original jurisdiction and require it to hear an action not authorized by the Ohio Constitution."' *Id.*, quoting *State ex rel. Cleveland Municipal Court v. Cleveland City Council*, 34 Ohio St.2d 120, 122 (1973). The court further considered an argument that the counterclaim was properly before the court under Civ.R. 13(B), but found that the Civil Rules cannot override the constitution and grant subject matter jurisdiction where it does not exist. *Id.*

{¶ 41} Although Vultaggio argues that the claims are intertwined, his broad request for declaratory judgment in his cross-claim need not be addressed in order to determine whether the three board members were properly removed. This court is limited to determining whether the actions of the board removing Vultaggio, Kollasch and Hack from the board were proper. It is not necessary to decide claims involving actions taken by the board after the alleged improper removal to determine the validity of the three board members' right to office.

**{¶ 42}** Accordingly, to the extent that the cross-claims request declaratory judgment regarding actions taken by the board after the three board members were removed, this court is without jurisdiction to decide these matters. Instead, if necessary, the validity of actions taken by the board can be challenged in a declaratory action after the issue of quo warranto is determined. See *Mosque v. Salim*, 2013-Ohio-2746 at ¶ 27.

**{¶ 43}** In his cross-claim, Vultaggio also requests attorney fees and costs. He alleges entitlement under several theories of recovery, including indemnification, quo warranto and condominium law, and asks this court to find bad faith and willful misconduct on the part of Morris, Exchmeyer, Little, Clifton and Towne. Vultaggio claims he is entitled to recovery for the cost of pursuing both this action and the action in common pleas court.

**{¶ 44}** "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7. However, under exceptions to this rule, attorney fees may be awarded when a statute or an enforceable contract specifically provides for the award of attorney fees, or when the prevailing party demonstrates the other party has acted in bad faith. *Id.; Nithiananthan v. Toirac*, Warren Nos. CA2014-02-021, CA2014-02-028, and CA2014-08-114, 2015-Ohio-1416, ¶ 57.

**{¶ 45}** R.C. 2733.14 specifically address recovery of costs in a quo warranto action, and provides that "[w]hen a defendant in an action in quo warranto is found guilty of usurping, intruding into, or unlawfully holding or exercising an office, franchise, or privilege, judgment shall be rendered that he be ousted and excluded therefrom, and that the relator recover his costs." However, as previously mentioned, this action was initiated by the Butler County Prosecuting Attorney, who is the relator in this case. Therefore, Vulatggio cannot recover under R.C. 2733.14.

{¶ 46} Vultaggio further claims entitlement to attorney fees and costs under R.C. 2733.17, R.C. 5311.19(A), and under a theory of indemnification under the bylaws. However, given our limited jurisdiction in this quo warranto matter, these issues should be pursued as a separate action.

{¶ 47} Finally, the parties have argued several other issues, including dismissal of parties and the validity of the March 2015 election as it relates to the two board seats which were open for election. However, as mentioned above, quo warranto is an extraordinary remedy, and as such, our jurisdiction is limited to deciding the issue of whether the three board members were improperly removed and entitled to their board seats. We again find these ancillary issues to be beyond our jurisdiction in this matter

## Conclusion

{¶ 48} Relator's motion for a writ of quo warranto is granted. The court finds that Vultaggio, Kollasch and Hack were improperly removed from as board members and they are therefore entitled to serve as board members until the expiration of their terms in March 2017.

{¶ 49} Judgment accordingly.

M. POWELL, P.J., RINGLAND and HENDRICKSON, JJ., concur.